The first case we have on calendar is United States v. Abouammo. Good morning, Your Honors. May it please the Court, my name is Carmen Smarandoglio, and I represent Mr. Abouammo. I would like to reserve two minutes. I will do my very best, but I can promise. Mr. Abouammo was indicted, tried, and convicted for acting as an agent of a foreign government, and more specifically, for acting as an agent of alleged foreign official Badr Binazaker. The District Court denied Mr. Abouammo's Rule 29 motion, reasoning that Mr. Binazaker was a de facto official, a concept that has no grounding in the plain language of the statute, and contravenes the very concept of sovereignty and settled international relationships. Not only that, but this unusual concept would inject impermissible vagueness in a term that is otherwise plain. So why did the Court do that? It did so, Your Honor, because the government did not prove that Mr. Binazaker was a foreign official, was an official at the time relevant in this case, which is from December 2014 through February 2015, when he looked into the two Twitter accounts. And you don't think the government put on an intermediary theory? It did not. Definitely not, Your Honor. And that is plain on the face of the indictment, where it repeatedly, 55 times more precisely, identified Mr. Binazaker as the foreign official and referred to Prince Mohammed bin Salman, to MBS, as royal family member one. Not only that, Your Honor. I mean, these theories aren't necessarily mutually exclusive, right? You could have someone who's a foreign official who's also an intermediary. So when you look at the jury instructions, there wasn't a whole lot of content, frankly, on the jury instructions about what any of this meant, but they seem to have both theories embedded. I disagree, Your Honor, because first of all, the indictment did allege an intermediary theory as to Co-Defendant Almuntari. So the government certainly identified somebody as an intermediary, but it was not Mr. Binazaker. It was Mr. Almuntari. Furthermore, from pretrial motions through opening statements, all kinds of pretrial matters, through closing arguments, the government consistently argued that Mr. Binazaker was a foreign official. So the fact that the jury instructions merely paraphrased the broad language of the statute, that's not an issue, Your Honor. Those instructions are correct. But what the government charged and what it proved, what it tried to prove, was that Mr. Binazaker was actually a foreign official. And I would note that upholding Mr. Obama's conviction on this theory that was not charged, prosecuted, argued to the jury, would violate both his Fifth Amendment rights and also his Sixth Amendment rights. Why do you think Binazaker was not a foreign official? I mean, you seem to have a narrow definition of that to be basically someone who's acting in a kind of de jure legal capacity for a formal government office. Where do you get that from? I get that from the plain meaning of the term official that refers to some, according to both dictionary definitions and various decisions that I included, refers to somebody who actually holds public office or plays an official role in a government. I also take that definition by contrasting, in a way, from the Supreme Court's decision in Percoco, who told us that there have always been, eminence Greece, people with significant influence on government matters, but who also do not actually are government officials. And the distinction between the two is very important because 951 is a statute about foreign relations. It's not a statute about bribery like in 311 where Congress defined the term official in a much broader manner. It's not like FARA where, again, Congress criminalized acting on behalf of a range of foreign people. I guess the pushback on this is foreign governments can be set up in different ways, and sometimes they're set up in ways that don't necessarily mirror ours, but where we're concerned that somebody is really acting at the behest of the foreign government, and why wouldn't that principle map on to this particular provision? That principle would carry, Your Honor, because somebody can, and that's what the government should have done, should have alleged, if you wanted, an intermediary theory. Acting at the behest of a government does not make one a foreign official. Sorry to bring this up, but when Rudy Giuliani is going abroad and speaking about foreign policy during the Trump administration, that does not make him an official of the United States government. The distinctions are important, Your Honor, and the fact that the government had the choice to allege an intermediary theory but chose not to do so, it is what matters because the statute is actually plain. What do we do with the visa? That seems to be, even on your theory, the evidence of the visa indicates that he was at least being positioned as some kind of official. Well, being positioned as an official does not make one, Your Honor, but more importantly, let's remember a couple of things. But again, we're here. I mean, there's no challenge to jury instructions, right? It's a sufficiency of the evidence. It is a sufficiency of the evidence. The May 2015 visa, Your Honor, so leaving aside all the problems with the reliability of that kind of process, which is extremely deferential to foreign governments, it only pertains to the latter part of the relevant period, May 2015, whereas the accesses happened here between December and February 2015, December 2014 to February 2015. But does the timing matter from the standpoint of what a reasonable jury could conclude from this document about just the nature of what this person was doing? Sure, Your Honor, because absent any other evidence, the jury would have to speculate how early Mr. Binasakar became a public official. And I would like to, again, to point out something that's very, very important. The government owns the government's own expert. When asked whether Mr. Binasakar played a role in the KSA government affairs before 2017, she would not say so. That expert, Dr. Dewan, presumably was shown that May 2015 visa. All she was able to say is that Mr. Binasakar has always been close to the power of this rising star that MBS was at the time and who in time became, indeed, a very powerful force in KSA. But at the time between December 2014 and February 2015, MBS was still a rising star, and Binasakar, notwithstanding his close relationship, did not have an official role in the KSA government. And because the government did not charge an intermediary theory, Your Honors cannot compete on that ground. Can you address the venue issue? I would love to. Counsel, before you do, could you address United States v. Chung and explain why Mr. Binasakar isn't a foreign official within the meaning of that case? Well, it is my understanding that in Chung, the defendant was told that various people in the government of China, in the government of the Socialist Republic of China, were asking him for the information. So I understand Chung to not even present a question about whether the people actually asking, demanding, offering, providing the commands and the order, being Chinese officials. To the extent that Chung actually is relevant, it says that when, under 951, the government has always had to demonstrate, to prove beyond a reasonable doubt, that a person acted at the behest of a foreign official. And that's the reality of the concept of a foreign government. Foreign governments are not embodied entities. They always act through people, and those people have to be foreign officials, or otherwise we need an intermediary theory. And with your permission, I would like to move to the venue question, because, as your Honor knows, the 1519 statute criminalizes whoever knowingly alters, destroys, mutilates, falsifies a record with obstructive intent. Under Rodriguez-Moreno, we need to start with identifying the essential conduct element of the statute. And the only essential conduct element that exists in 1519 is the falsification, alteration, and so on. Obstructive intent, while an essential element under Requirements Rea, is a merely circumstance element under the Rodriguez-Moreno test. It describes the circumstances under which the prohibited conduct becomes criminal, but does not require action and does not require effects. How do you distinguish this case from our decision at Agnati, which is somewhat similar, different statute, but similar factual pattern, where the court says, well, this is a continuing crime, and therefore it impedes the investigation until— I might mispronounce the name of the decision. I call it Angotti. Maybe it's—are we talking about the same one? Hopefully, yeah. Maybe I flubbed. So, I will start for—with your permission, I will start actually with Fortenberry, because what Fortenberry is telling us is that the concept of continuing offense does not dispense with applying, in the first instance, the Rodriguez-Moreno test. We still have to identify the essential conduct element, and then when the conduct fulfilling that element spans more than one district, then venue can be found in multiple districts. The way Fortenberry, and personally, I understand Angotti, is to say that under 18 U.S.C. 1014, which criminalizes making certain statements to influence certain federal agencies, federal banks or whatnot, that the essential conduct element in that case is making the statement, but because of this required intent to influence the federal institution, that conduct is a continuing one, which begins when the statement is made, but is only complete when the statement actually reaches its intended audience. So, in other words— Could we—assume your friend on the other side would say, well, he falsified the record to the agents in Seattle, but presumably the agents would have gotten the falsified record and would have sent it back to their superiors or supervisors in San Francisco. So, therefore, it's like a statement. It was continued on and impeded the investigation and deceived the supervisors. 1519 does not criminalize making false statements. It criminalizes— Excuse me, falsifying the records. Falsifying records. But they would say that record would be transmitted to the headquarters in San Francisco. Right. But what's important, Your Honor, is that whatever happened with that record after it was falsified actually is irrelevant. The offense was completed the moment that Mr. Abuwamo actually falsified the statement. The same—he would have been as guilty if instead of emailing the statement, he would have printed a copy and given to the agents in his living room. Right. But why wasn't that also basically true in Ngoti? No, Your Honor. Ngoti, again, and I'm not saying that it actually is correct, but Ngoti understood the kind of making a statement to mean making a statement to somebody. This is very different than just falsifying a record. And I will say, Your Honor, we also have to consider Fortenberry, which distinguished Ngoti. We also have to consider United States v. Marsh in which this court distinguished Ngoti because in that case it was an endeavor to impede the function of certain agents involved in tax collection with intent to obviously obstruct their investigation. And what this court said in Marsh is that the only conduct that the statute criminalizes is the endeavor to impede. And the fact that obstructive intent is required is irrelevant because nothing is actually required to happen. Whether somebody is actually obstructed or impeded is irrelevant. No effects are implicit in that conduct. What do you make of the line in Fortenberry that says the venue might be proper in the jurisdiction for obstruction of justice? Do you remember that line in Fortenberry that says, well, that venue might be proper in the jurisdiction where the case was taking place? Would you just say that line? It's not binding, but would you say that's just incorrect? First of all, it is certainly a dictum, Your Honor. And second, I think that Fortenberry just did not have the occasion to really think through all the issues that arise in this context. I hear you on that, but do you think there's a distinction between this statute and the obstruction of justice statute? Well, certain obstruction of justice statutes, Your Honor, actually require that obstruction occur, that a jury or juror or a witness number be actually impeded. So certainly there are obstruction of justice statutes in which the essential conduct element is drafted in terms of its effects. These statutes, 1519, there are at most potential effects, and the essential conduct element is much, is narrow, and it's falsification and requires nothing else. But do you think, I mean, you seem to be making a distinction between whether something actually produces harm in the venue where the case is filed or whether it could just potentially do so. I mean, the statute on the face of it in Engadi seems to have the same kind of issue with potential where you could be making a false statement for the purpose of influencing a banking institution, but it doesn't necessarily tell you whether the false statement did influence it. And that's correct, Your Honor, and I believe that Engadi is actually clearly irreconcilable with Rodriguez-Moreno. Okay, I thought that makes more sense to me that you would say that. But I think there is, you know, because you are a three-judge panel and probably you would not want to go there. I think there is a way to read Engadi, and that's my understanding of what Fortenberry actually tried to do, is to say, look, in light of this mens rea, we read making a statement to mean making a statement to somebody, and that means a continuing offense that starts here and continues all the way until that statement reaches its audience. So what do you think should be the test for these types of statutes that involve basically doing some bad act with the intent to affect some other thing and that other thing can be in a different, you know, might be taking place in a different venue? What do you think the test should be? So, Your Honor, I think, and I don't know if I have a test for you, but I have some thoughts. One thought is that Congress, in statutes that are similarly broad or open, has decided to include a special venue provision to take care of this issue. The second observation is that the Supreme Court in Rodriguez-Morano actually left open the extent to which the effects of the crime can play a role in determination of venue. So we don't even know when we're only talking about potential effects as opposed to actual effects, what the Supreme Court would even say. And to return to Fortenberry, my understanding of Fortenberry is that it drew a line between statutes in which the essential contact element implies actual effects and distinguished cases in which those effects might only be potential. And Section 1001 itself is such a statute, right? In that case, there is a requirement of materiality. The government argued that because of that, the statement will at the very minimum have some potential effects. So would you say the test, just to follow up on it, would you say the test should be if the statute requires there to be effects in another place, that would be sufficient, but if it just has the potential for effects, then you couldn't? The venue would have to take place where the act occurred? Yes, Your Honor. I think that is my test. I think that's what Rodriguez-Moreno requires, and I think that's what Fortenberry requires. Okay. With Judge Lee's permission, can we talk about the loss issue? Can you address the loss issue? Yes, Your Honor. Regarding loss, the district court enhanced Mr. Abuamo's sentence by 10 levels, his offense level by 10 levels, in reliance on commentary note 3B, which instructs that courts substitute the defendant's gain for the victim's loss when loss cannot reasonably be calculated. Just assume you're right about this. Would it make a difference in your client's sentence here based on some of the district court's other comments? I think, Your Honor, it can very well do because, you know, there is a long line of cases that says that district courts have to start with the correct guidance calculation, and we also acknowledge that the district court can actually vary upward or downward when the guidance calculation does not accurately reflect the seriousness of the offense. But the district court has to start the correct guidelines, and for that reason, Your Honor, I think it does make a significant difference to my client because the district court, once presented with these significantly lower guidelines, might make a different decision about what the appropriate sentence is, especially because this sentence is an upward variance from the correct guidelines, whereas right now it's a downward variance from the incorrect one. And I know that I'm so over my time. We'll give you two minutes for rebuttal. And just to clarify, you are not interested in hearing about a set of limitations? It's okay if you don't. You just have to let me know. I mean, there's a lot of issues in this case. Why don't you go ahead, and if it's okay with you. Judge Breslin will have to buy me lunch, but I'll let him do it. Well, I'm going to be buying you a few lunches here today. Go ahead. I appreciate it, Your Honor. As you know, the statute of limitation issue is informed by two statutes, 3282 and 3288. The government would read the two statutes in isolation of each other and would ask you to say that in every single case, in every single felony case going forward, the government can unilaterally extend the statute of limitations by six months in felony cases by the mere formality of filing on the docket information. Would there be no other checks on that? I mean, you can move to dismiss the information. There's probably some speedy trial issues that could arise or some other delay issues. Well, Your Honor, I don't think so. I don't think so. But more importantly, until a trial actually starts, dismissal of information is at the will of the government with the permission of the court, of course. But there is really no check on this kind of dismissals. And you are probably aware of the decision in BGG, United States v. BGG in the 11th Circuit, where this court actually tried to say, well, I'm going to dismiss this information with prejudice because this is a plot to get around the statute of limitations, and I'm not going to endorse that kind of tactic. Well, the 11th Circuit reversed and on remand that this court again dismissed, but on different grounds. So the government argues that you're trying to basically put back into Section 3288 some language that was removed. How do you address that issue? I don't think I'm doing that, Your Honor. I mean, first of all, it is true that a previous version spelled out that information needs to be filed after waiver of the indictment by the defendant in open court. But when Congress rewrote the statute in 1988, we know from the legislative history that that's not what it was interested about. It wanted to remove any particular reasons for which an indictment might be dismissed, but otherwise was not interested in the issue of information. And in the process of doing this technical rewriting, what it did, it referred to both an indictment or information charging a felony. This language, indictment or information charging a felony, in my mind, clearly refers to an operative charging document, not a piece of paper that we call indictment or information and that can otherwise not support a prosecution, a trial. So on this issue, are you asking us to disagree with the Seventh Circuit and the Fourth Circuit? I think both decisions are very similarly reasoned. And one of the biggest faults that I see in those decisions is that they completely ignore the Supreme Court's decision in Japan. And unless your honors have further questions at this moment, I would like to reserve a bit of time. Thank you. May it please the Court. Jeffrey Smith for the United States. The district court's rulings in this case were correct, and the judgment should be affirmed. First, the district court correctly denied the defendant's Rule 29 motion regarding the Section 951 conviction, Count 1. The evidence overwhelmingly demonstrates defendant's guilt here. Among other things, the testimony of Special Agent Wu. Special Agent Wu testified that the defendant told her that Benisacker was a Saudi official and a member of the King's team and that the defendant had left Twitter because of contacts from the Saudi Arabian government specifically mentioning Benisacker. Mr. Smith, is it enough that Mr. Benisacker represented himself as a foreign official? Doesn't he have to be a foreign official? And what is that anyway? So I have a couple answers to that. First, it is necessary for Saudi Arabia to actually be involved. That is, if he was just someone who was lying and saying, I'm representing Saudi Arabia, that would not be sufficient. There is substantial evidence, additional evidence. I want to get to your questions rather than going through them. There's substantial evidence that he was, in fact, a Saudi official and that he was, in fact, representing the Saudi government in his dealings with the defendant. As to government official, in this case, the charged principal under 951 was the government of Saudi Arabia, and that's right in count one of the indictment, and it's also in the jury instructions. And so what was necessary to be proven was that when the defendant took instructions from Mr. Benisacker and when he gave the stolen information to Benisacker, that Benisacker was acting on behalf of the Saudi government. And that's what the district court— This is now you're talking the kind of intermediary theory before we even decide whether Benisacker was a foreign official? So the defense used the term intermediary in their opening brief, and so we addressed that in our brief as well. There's no—I mean, intermediary theory isn't a specific— It's not in the statute. Right, it's not in the statute. It's not a term of law. It is a term that we would not normally use in this case because we normally use intermediary to mean someone who's not part of the government, and Mr. Benisacker clearly was part of the government. But it's not legally different. That is, if you have a chain, and at one end is the government of Saudi Arabia, at the other end is the defendant, then any link in the chain could be considered to be an intermediary, even though Mr. Benisacker was himself a foreign official as well. He was a foreign official who was serving another foreign official who was serving the government, or they were both serving the government. He was asked to find whether he was a foreign official, and that was the instruction. So what is a foreign official? There was no—so I do want to answer your question. There was no jury instruction specific to Mr. Benisacker. The jury instruction was— Defined foreign government. Well, the jury instruction defined foreign government. That's true. But there was no instruction specific to Mr. Benisacker at all. The jury instruction named the principal as the government of Saudi Arabia— a foreign government, the kingdom of Saudi Arabia, and the royal family— members of the royal family, I should say. In terms of what is a foreign official, so we don't think the court needs to define the specific statutory term in 951 because that's not relevant to this decision. However, we would look to— Just to be clear, it's not relevant because he was acting at the behest of the Saudi government and whether he was a foreign official, that's the so-called intermediary theory? Again, it's—the charge principle is the government of Saudi Arabia. So ultimately what matters is whether the government of Saudi Arabia is a foreign government under 951, and there's no dispute that it is. So we don't think it's necessary for the court to define the term foreign official in 951, but if the court—but under any of the definitions that have been put forward, including the defendant's definition that he put forward in his brief, Mr. Benistocker clearly qualifies. The defendant says it's someone who holds public office or otherwise serves in an official position in a foreign government and is therefore authorized to exercise some portion of the foreign government's sovereign powers. The evidence in this case clearly is sufficient to meet the Rule 29 standard on that, even on that definition. In addition to Agent Wu's testimony that I talked about, as Judge Bress mentioned, Benistocker himself and the Kingdom of Saudi Arabia represented to the U.S. State Department that Benistocker was an official employee of the royal court whose vocation was government. The emails that the defendant sent to his colleagues at Twitter represented that the communications he'd had with Benistocker were coming from high levels of the Saudi government. In February, during the time period that my colleague talked about, Mr. Benistocker registered an email in the domain HRHPMPO, which stands for His Royal Highness's Prince Mohammed's Private Office. There was expert testimony that a senior royal's private—or any royal, but particularly a senior royal's private office handles public affairs and public issues. And even defendants' experts said that there's no real distinction between the private office and the public affairs of state. And a government's expert also testified that Benistocker was the main aide and right-hand man to Prince Mohammed, who held the title of minister during all relevant times. It seems like the defendant is just saying, well, listen, that's all fine, except that he did not actually have an official government title and an official government agency, and that's what we should look to. So, one, I don't think that's what you should look to, even assuming you are interpreting the statute, because, again, their own definition doesn't require a particular title. There's just no basis for that. But in any event, the jury—the Rule 29 standard allows— requires this court to defer to the inferences from the evidence, and the jury clearly could have inferred that he had an official position with Prince Mohammed's office and with the royal court, particularly because the Kingdom of Saudi Arabia itself said he was an official-slash-employee of the royal court. Could we say that, even if we don't think he's technically officially employed by the Saudi government, that de facto he is under the Saudi government? I mean, I think that he—yes, you could say that. Their system of government is a little bit different from ours. Their system of government is a lot different from ours. And, of course, the purpose of the statute is to prevent foreign government influence within the United States without the proper notification being done. And so to allow someone to operate because they were able to keep their name off of the payroll or whatever, but they're actually operating on behalf of the government— the nature of the scheme here was personal, private information about Saudi dissidents. The nature of the scheme, again, shows that it's a government, a public affairs scheme. It's not the private acts of a private person. It wasn't Mr. Binisakar going after his own personal enemies. These are dissidents criticizing the Saudi regime. Can we go to the statute of limitations issue next, and can you respond to your opposing counsel's point that basically information could just be dismissed and you could just do this kind of indefinitely? Oh, so no, I don't think you could do it indefinitely because the information—in order for 3280— so we're going entirely by the plain text of 3288 and 3282. In order for—an initial pleading with the relevant charges has to be filed within the statute of limitations period, and then there's a six-month period after that is dismissed. But you can't keep doing that. You can't use like six months on top of six months. No, that's true, but I think the implication is that you could kind of file a placeholder information and then have that sit there for a long time and then eventually dismiss it and get a superseding indictment. That's not really true either. First, I think it's important to note, and as the Fourth Circuit noted in Briscoe, in order for the ultimate pleading to be valid, it has to relate back to the earlier pleading. And in that case, there's some discussion of that because they weren't exactly identical. Here they're exactly identical, so there's no problem with the relate back. But the fact that the government has to have made its case within the statute of limitations period and has to have filed that in a way that gives notice to the defendant within the limitations period of the charge that he is going to be defending, and also, as the district court noted, he can file a motion to dismiss. It can support an arrest warrant if necessary, which wasn't necessary here. It can lead to a preliminary injunction, and, of course, again, it gives notice, as the Fourth Circuit noted, the most important function of the statute of limitations. So, I mean, here the information was filed in April 2020, I think? Yeah, April 7th. And then the superseding indictment in July, so not a huge amount of time. But what would have happened if it had been, you know, the information was filed in April 2020 and then the superseding indictment wasn't filed for another five years? So I think I have two answers to that. One, the defendant would have the opportunity to push things along, of course, and to ask for a preliminary hearing to move to dismiss, but also the speedy trial limits within the Sixth Amendment apply here. And other due process rules may apply as well. So it's not as if the government can just, like, put things on ice and leave the defendant hanging. The defendant has the opportunity to go to court immediately if he wants to, and in any event has other rights, including those related to the speedy trial. Is it the government's position that this issue can be resolved just on the basis of 3288 without getting into the meaning of the word instituted in 3282? Well, I think that the – and I think I read the defendant's reply as agreeing with this point, that the phrase the information is instituted in 3282 referred to the same thing as the failure to file within the period in the last sentence of 3288. So it seems clear that what the statutes are referring to is the filing of an information. Now, if the court wanted to, you know, take the independent look at the word institute, I think, you know, you could look at what the Fourth Circuit did in Briscoe and what the San Filippo and other district courts, Rothenberg I was thinking of from right here, have very persuasively explained the meaning of that, the statutory meaning of that, of the term instituted and that it means to start or set in motion causing to come into existence. So in modern times, the filing of an information is what causes it to come into existence. And thus, that is sufficient to meet the terms of 3282. I hope that answered your question. Yeah, no, it does. Can you address the venue issue? I mean, the invoice was falsified in Seattle. I mean, why is a venue proper in San Francisco? So the venue issue is controlled by this court's precedent, specifically, Angotti, Pace, and Fortenberry, and more specifically, Fortenberry's discussion of Angotti. Fortenberry, of course, in Angotti, as the court is aware, the court found venue in the Central District of California, in Fortenberry, the court distinguished that and it said that Section 1014, which was at issue in Angotti, unlike 1001, which was at issue in Fortenberry, quote, expressly contemplates the effects of influencing the action of a financial institution, which in that case was the headquarters in Los Angeles. And it's basing this in the same page, page 710 of Fortenberry, it's basing this on the language in the statute for the purpose of influencing the action. And the 1014, in all relevant senses, is directly parallel to 1519 in the following ways. First, each criminalizes falsification on a document. Second, for the purpose of influencing. And third, some protected activity or action. But how far does this go? So looking at the statute here, 18 U.S.C. 1519, it says intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency. So I guess your point is this was the agency here is the U.S. Attorney's Office in Northern District of California? Yes, and the FBI office. How far can that go if the government brings in FBI agents or agencies from Maine DOJ to be involved? I mean, obviously you're from Washington, D.C. Yes. Is venue proper in D.C. because some decisions will have to be made in D.C.? No, I don't think it goes that far. I think the issue here is that the 1519. Why not under the logic, or if we read the statute that way, maybe the final. I know it's not probably for most cases, but certain high profile or certain areas like tax or national security, you have to get the sign-off from Maine DOJ, or maybe they send agents from Washington, D.C. to do it because they have some specialized skill or knowledge. Well, I think it's possible that if there was some sort of requirement for, say, solicitor general approval or something like that, and the false document got to that person and affected her decision, then it's possible it would be like Ngati. But I would say the court doesn't need to go there in this case because— That seems like a crazy result then. Government can always involve Maine DOJ FBI agents from D.C. in high profile cases and have the venue in Washington, D.C. No, I don't think that at all. I was saying if there was a specific decision that needed to be made, and the decision-maker was thinking to influence that particular decision, then it might be on all fours with Ngati. But again, that's not this case. Here, 1519, it infers the idea of an investigation of predicate crimes. That's the whole idea of an ongoing investigation or expected investigation that the person is purposely trying to influence. Here, the underlying crimes were committed in this district, in the Northern District of California. The defendant knew that. The defendant lived and worked in the Northern District of California and was, unlike Ngati, was aware that the investigation was centered there. He forged this document or made the false entry on this document at the very end of a long—or I don't know how long it was—of a relatively extensive interview. So he was aware of all of these facts. And, of course, the agents had introduced themselves as coming from the San Francisco area office of the FBI. So here, this isn't a situation where the government is sort of manipulating jurisdiction. This is the natural place because it's the place where the underlying crimes occur. I agree. There's nothing untoward. It just started in San Francisco. This is, you know, with Twitter here. But just, you know, kind of logical result of the government's position is let's get Maine DOJ involved. And in high-profile cases or certain areas, national security, tax, where you have divisions in D.C. or get a Maine DOJ or Maine FBI agents involved, and you can have a plausible case for venue in Washington, D.C., public corruption, etc. And you'll work in conjunction with the local U.S. Attorney's Office. But you see that a lot where Maine DOJ and Washington, D.C. FBI field agents are involved. Yes, I think it's the mere involvement of someone from Washington would not be sufficient, but I would have to look at the facts of a specific case, and here we don't have that. I mean, here we have just the invest—we're just talking about the investigation of the crimes, where they occurred by the office that has the jurisdiction of the FBI. And, again, this isn't, you know, really based on DOJ. It's based on—or the lawyers. It's based on the agents' investigation. Your opposing counsel wanted to draw a distinction based on potential effects and actual effects. Can you respond to that? Well, there's no distinction between 1014 and 1519 in that regard. The relevant language in 1014 that the court in Fortenberry cited is for the purpose of influencing in any way the action of, and then it's a long series of potential entities, including banks. 1519 is with the intent to impede, obstruct, or influence the investigation. So neither of them, for a crime to have been committed, require the influence to actually work or even to necessarily reach the person. And that was clear in Ungadi, that he could have been—the crime—he had committed all his criminal actions when he provided the false document in the Northern District of California, and, indeed, probably under the statute even when he had just signed it, so long as he had the purpose of ultimately getting the loan based on the false documents. But, nevertheless, the court in Ungadi said that the act of making false statements continues until the statements were received by the person whom they were ultimately intended to influence, which, in this case, was the person in Los Angeles. Can you address, if we can, the loss issue? Oh, sure. So the district court, in this case, said that there is a logical reason to value the loss based on what Mr. Abu-Amr was paid by the Kingdom of Saudi Arabia to obtain the private information, and at another point said it was the appropriate way to measure loss. The defendant simply hasn't explained what the district court should have done to measure loss. Really, how is the value of a watch and the payment reflective of whose loss are we talking about? Twitter's loss? Somebody else's loss? Anybody's loss? How is that—even if gain can be a measure of loss, how is that appropriate here? So the loss—so as the district court said, the loss is—or, sorry, the value of stolen information can be measured based on what someone is willing to pay for it. Now, normally that's going to undervalue it because you don't have—you have a limited number of— and that's certainly the case here. You have a limited number of customers, which is why— So that's the idea, that this money, the value of the payments plus the watch, equals what somebody would have paid Twitter to get this information? Well, it's what—the government of Saudi Arabia did pay the defendant to get this information. So it's not what— Right, presumably with a premium for the alleged illegal features of this that he had to go through to provide the information. So I would think it would be with a discount because there's no one else who would buy it, and he really has no ability to bargain. But either way, whichever one of us has a better view on that, it seems that it just underscores the problem here that this is not really a measurement of loss. It's a measurement of something else. Well, I don't agree. I think it's not a perfect calculation. That's certainly true. But— It's not a meaningful calculation. How is it a meaningful calculation in any sense of loss? I mean, there may be some other losses here that you could have demonstrated, whether through testimony from Twitter or otherwise. But, I mean, we're talking about just the value of a watch and some cash. Well, there was testimony from Twitter in the trial about the importance of this information to Twitter and how it was a significant business decision to keep information confidential and how that was important to their business model. And there was also testimony about the extensive investigation that they had to go through as a result of this. Now, there are no dollar figures put on that, and I don't think you could have—one could have put dollar figures on that. Why not? Why not? I mean, why not? Why couldn't somebody have come in and just said, we spent weeks resolving this, trying to investigate this, and we estimate that the amount of time of our company and the loss to our company's reputation was the following, and that could have been credited or not. Well, Your Honor, I suppose somebody could. I mean, somebody could have done that, and you'd have the same objections that people are making guesses and estimates. Well, you have— Estimates? I think you'd have some different objections that that's not—you know, those numbers are maybe not accurate, but you wouldn't have the objection we have here, which is that there's just a mismatch between the two things we're talking about. So I don't read that as actually the defendant's objection, although maybe it will be on rebuttal. Their objection is that loss cannot be used—I'm sorry, yes, loss—that gain cannot be used as a measure of loss, despite the fact that it's been frequently used in cases in this circuit and that it's used in a variety of ways, as the district court explained in its opinion. Can we decide that question without addressing whether or not loss is ambiguous in 2B1.1? So I think that you can because the district court found that it was the appropriate way of doing it. However, I understand the argument that you should address whether loss is ambiguous. It is in—well, let me go with what the district court found, that it is ambiguous because it doesn't say what—you have to have a loss based on the plain text. It just says you have to apply loss. It doesn't say what to do when you know that the loss—you've determined that the loss is not zero, but you also can't precisely calculate it. And so then you need to use other tools. It certainly doesn't unambiguously strike this common tool for measuring loss. So the guideline says calculate gain if you can't calculate loss, but you only get to that guideline note if we find that loss is ambiguous. Yes, you only get to the—yes, I think that's right. I will note there's some situations clearly where it might be a meaningful measure of loss, right? If you steal someone's watch and they have some—we don't know what it's valued at, but you go and sell it on the black market and you get some money for it, that might reflect the value of the watch. But here we're talking about value of stolen information and the cost of having to address that problem within a company versus the value of gifts and other cash that was given to the defendant. Those two things seem—there seems to be less of a relationship there. You know, there's—I suppose there's less of a relationship, but, you know, it's the same idea of selling stolen goods. Now, you know, as courts have recognized, when you're talking about intangible property, it's harder to value than the watch in your hypothetical. But the courts still need—district courts still need a way to make a best measure in order to demonstrate the severity of the fraud. And, of course, the fraud guideline is very extensive because— in order to punish major frauds more so than minor frauds. I would—if you'd give me just a second, I would like to address the question that you asked my colleague about what effect this would have. I think it's very unlikely to have any effect because, first of all, the defendant— I'm sorry, the district court made clear that the sentence on count one, which is the same 42 months, would be the same regardless of the guidelines calculation. And count one was not part of the guidelines. There was no guideline for count one. And it's an interesting case because, you know, the count that most embodies the egregious conduct of the defendant, and yet there's no—the guidelines is driven instead by the fraud guideline because there is no guideline for count one. Secondly, the district court didn't sentence within the guidelines anyway. And third, it seems likely that—although not certain—that by the time the case returns, the guidelines will be amended such that note three will be in the main guideline. Great. Thank you. Yeah, so I would just ask that the court affirm. Thank you. I'll try to be very, very brief, Your Honor. And I'll start in reverse order with the loss issue. Just to be clear, the ex post facto clause applies to the sentencing guidelines and the Supreme Court precedent. So Mr. Abuamo on resentencing would have to be resentenced under the guidelines, in effect, when he was initially sentenced. And I see Judge Kane nodding. Judge Bryce, your line of questioning goes to the heart of this issue. What this information was worth to KSA is not the same thing as what losses Twitter suffered. And the mere fact that the district court had to go to this application note, we know that because that application note only comes into play when losses cannot reasonably be determined. And to go back to Judge Kane's question, we cannot decide, you cannot decide this issue without first determining that losses is ambiguous in this respect. And with all due respect, it is not. To move back to venue. Just to stay with loss. So would you agree then loss could include costs that Twitter incurred to internally investigate this issue? I assume that they can try to do that. And they've had the opportunity to do that. It's my understanding that they proffered no evidence whatsoever. To move to venue. I'm re-reading, I'm skimming Fortenberry again, and it is clear to me that Fortenberry made a distinction that I proposed between potential effects and actual effects. And I would point, Your Honors, to pin sites 708 and 712. The 712 pinpoint is where this court concludes that because Section 1001, because a Section 1001 offense is complete at the time the false statement is authored, and because no actual effect on federal authorities is necessary to sustain a conviction, the location of the crime must be understood to be the place where the defendant makes the statement. And I would only point this. My colleague is completely ignoring the discourse decision in March, which I've already addressed. And I'm not quite sure what PACE has to do with our issue, because in that case the essential conduct element is the wire fraud, and, of course, the wire fraud can travel between districts. Finally, in this case, actually, the DOJ and the NSA in D.C. was actually involved. So, Judge Lee, your questions about could they have prosecuted in D.C. probably, under the government's theory, is yes. Well, there's still some mens rea component to this, right? The defendant has to know. No, a defendant does not have to know where venue lies. There is no such thing as a mens rea associated with venue. No, but, I mean, here they came in and indicated they were part of an investigation that was happening in California, right? Sure, but that's not a mens rea requirement. It's just what happened. Even if they said nothing, venue would have still lied what the investigation was contemplating or something. There is no mens rea associated with venue, Your Honor. And I would like to also make— So what does it mean that you have to intend to obstruct an investigation within the jurisdiction of the Department of the United States? You'd have to know the fact of the investigation, but not where? You'd have to know that that's something the federal authorities can investigate. For example, you know, electoral fraud. You don't have to know what an investigation has to be, what the contours of that will be, what the potential charges might be. None of that, Your Honor. Also, even under the government's theory, venue is still improper here because Mr. Aguamo emailed that invoice to the agents while the agents were in Seattle, and that's where they received that invoice. So even under their theory, they lose. But I urge Your Honors to actually decide the issue under the correct application of the law and not on this impermissible theory. And finally, just on the 951, very, very briefly, my colleague brought up an email address from February 2015. That email address ends in com, just like all of us have gmail.com email addresses and whatnot. That particular email address, which the district court did not even bother to address in its ruling, says nothing about whether Mr. Binazaca was a foreign official. And I'm really, I was really struck to hear my colleague suggest that, Your Honors, don't have to decide what a government official even means. I think, and to go back to Judge Kane's question, Chang makes clear that in every single case, at the bottom, there must be a foreign official somewhere. So it's important to know what the foreign official is and who that person is. And in this particular case, the indictment has clearly identified Mr. Binazaca and only Mr. Binazaca as the foreign official and identified al-Muhtari, co-defendant al-Muhtari, as an intermediary between that foreign official and the other co-defendants. And unless Your Honors have further questions, maybe? No, I think we're good. Thank you. Okay, great. I know we went double over time in this argument, but thank you both for the excellent advocacy and helpful argument. The case has been submitted.
judges: LEE, BRESS, Kane